| | |
|---|---|
| MIGUEL CONTRERAS, CDCR #K-71716,<br><br>Plaintiff,<br><br>vs.<br><br>J. HERRERA, Correctional Officer,<br><br>Defendant. | Case No.: 3:18-cv-00717-MMA-AGS<br><br>**ORDER:**<br><br>**1) GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME AND RENEWED MOTION TO PROCEED IN FORMA PAUPERIS [Doc. Nos. 4, 6]**<br><br>**AND**<br><br>**2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Plaintiff Miguel Contreras, currently incarcerated at California Substance Abuse Treatment Facility ("SATF") in Corcoran, California, and proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Compl.") against J. Herrera, a Correctional Officer employed at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California. *See* Compl., Doc. No. 1. Plaintiff alleges that while he was incarcerated at RJD on December 18, 2016, Herrera violated his constitutional rights by

terminating a visit with his wife and developmentally impaired daughter, and issuing "false" disciplinary charges against him which resulted in a finding of guilt and the suspension of his visitation privileges for 180 days. *Id.* at 2-5. He seeks to expunge the disciplinary conviction and to restore his visitation privileges, as well as compensatory, punitive, and special damages. *Id.* at 5.

## I. Procedural History

Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) at the time he submitted his Complaint on April 11, 2018, nor did he file a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* Doc. No. 1. Therefore, on April 23, 2018, the Court dismissed the case, but granted Plaintiff 45 days leave in which to either pay the filing fee in full, or to file a properly supported Motion to Proceed IFP. *See* Doc. No. 2.

After that time passed, Plaintiff filed an ex parte Motion for Extension of Time combined with a Notice of Change of Address. *See* Doc. No. 4. Before the Court could rule on his Motion, Plaintiff submitted a Motion to Proceed IFP, which the Court accepted for filing despite its untimeliness, and re-opened the case. *See* Doc. Nos. 5, 6.

## II. Motion for Extension of Time and Renewed Motion to Proceed IFP

As Plaintiff now knows, to institute a civil action, he must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite his failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews*, 493 F.3d at 1051; *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, because he is a prisoner, even if he is granted leave to proceed IFP, Plaintiff remains obligated to pay the entire filing fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182,

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

1185 (9th Cir. 2015), and regardless of whether his action is dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his renewed IFP Motion, Plaintiff has submitted a Prison Certificate issued by an Account Specialist at SATF, as well as copies of his CDCR Inmate Statement Report attesting to his trust account activity and balances for the 6-month period preceding the filing of his Complaint. *See* Doc. No. 6 at 5-8; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Plaintiff carried a $40.84 average monthly balance and had $16.67 in average monthly deposits to his account. *See* Doc. No. 6 at 5, 7-8. Therefore, the Court **GRANTS** both Plaintiff's Motion for Extension of Time (Doc. No. 4) and his renewed Motion to Proceed IFP (Doc. No. 6), and assesses his initial partial filing fee to be $8.16 pursuant to 28 U.S.C. § 1915(b)(1).

However, because Plaintiff also had no available balance on the books at the time he filed his renewed IFP Motion, *see* Doc. No. 6 at 5, 7, the Court will direct the Acting Secretary of the CDCR, or his designee, to collect the initial $8.16 fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C.

§ 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**III. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

A. <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter,

4

3:18-cv-00717-MMA-AGS

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. Plaintiff's Allegations

While he was incarcerated at RJD, Plaintiff claims to have "frequently" been granted visits with his wife and daughter, who requires a wheelchair and suffers from a seizure disorder and cerebral palsy. *See* Compl., Doc. No. 1 at 2-3. Plaintiff claims that on "several occasions" Defendant Herrera subjected his wife to "sexual harassment," comments, gestures and "sexual innuendos," but his wife "blithely displayed a pattern of not responding to [this] unethical conduct." *Id.* at 3.

On December 18, 2016, however, Plaintiff's visit with his wife and daughter was "abruptly" terminated based on a "false written 'RVR' rule violation report" issued by Defendant Herrera, charging Plaintiff with "sexual misconduct." *Id.* at 3 & Ex. B, ECF No. 1 at 12-16, Log No. RJD-C-1732124.[2] Plaintiff was later found guilty, and had all visiting privileges terminated for a period of 90 days, followed by a 90-day suspension of his contact visiting privileges. *Id.* at 15-16. He contends the Senior Hearing Officer

---

[2] Cal. Code Regs., tit. 15 § 3176(a) provides that "the official in charge of visiting may deny an approved visitor access to an institution/facility, terminate, or restrict a visit in progress" for "conduct in violation of institution/facility procedures, including excessive physical contact, …." *Id.*, § 3176(a)(4). "Inmates and their visitors may hold hands" however, and "[a]t the beginning and end of each visit, inmates and their visitors may briefly embrace and/or kiss." Cal. Code Regs., tit. 15 § 3175(d), (e).

5

("SHO") denied him due process during the RVR hearing by refusing to review video-tape footage of the visiting room that Plaintiff claims would have exonerated him, and Defendant Herrera violated his Eighth and Fourteenth Amendment rights by filing a "false" RVR "maliciously and sadistically." *Id.* at 5.

Lastly, Plaintiff alleges Herrera's RVR violated an unidentified California law which subjects peace officers to criminal penalties based on the filing of materially false reports during the investigation of any crime. *Id.* at 4. He seeks declaratory relief, to expunge the RVR from his institutional record, the restoration of visiting privileges with his wife, as well as compensatory and punitive damages.[3] *Id.* at 5.

C. Standing

As an initial matter, the Court finds that to the extent Plaintiff claims his wife was subject to "numerous acts of sexual harassment" perpetrated by Defendant Herrerra during her visits with Plaintiff, *see id.* at 3, he cannot represent her, and he does not have standing to bring claims for any injury she may have suffered. *See Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002) ("It is a well-established rule that a litigant my assert his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties."). Parties to a lawsuit enjoy the privilege to "plead and conduct their own cases personally." 28 U.S.C. § 1654. But a litigant proceeding *pro se*, as Plaintiff is here, does not have the authority to assert others' claims vicariously. *See C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) ("Although a non-attorney may appear in propria persona in his own behalf, that privilege is personal to him.... He has no authority to appear as an attorney for others than himself."); *see also Simon v. Hartford Life Ins. Co.*, 546 F.3d 661, at 664-65

---

[3] To the extent Plaintiff seeks injunctive relief requiring Herrera or other RJD officials to expunge his RVR and/or restore his visitation privileges, his claims are moot. *See Andrews v. Cervantes,* 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison].")).

(9th Cir. 2008) (citing cases "adher[ing] to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity.").

### D. Fourteenth Amendment—Due Process

To the extent Plaintiff alleges Defendant Herrera violated his due process rights by issuing a false RVR that resulted in a 90-day loss of all visitation, followed by a 90-day loss of his contact visitation privileges, he fails to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin's* wake the Courts of Appeals have not reached consistent conclusions for
7

3:18-cv-00717-MMA-AGS

identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

Insofar as Plaintiff claims Hererra "fil[ed] a false RVR that subsequently le[d] to [his] visits being suspended for six months," *see* Compl., Doc., No. 1 at 4-5, his allegations fail to state a plausible due process claim.[4] *Iqbal*, 556 U.S. at 678. First, "[t]he issuance of a false RVR, alone, does not state a claim under section 1983." *Murschel v. Paramo*, 2018 WL 539159, at *5 (S.D. Cal. 2018) (citing *Dawson v. Beard*, 2016 WL 1137029, at *5-6 (E.D. Cal. 2016)). Instead, claims of arbitrary action by prison officials must grounded in "'the procedural due process requirements as set forth in *Wolff v. McDonnell*.'" *Murschel*, 2018 WL 539159, at *5 (citing *Ellis v. Foulk*, 2014 WL 4676530, at *2 (E.D. Cal. 2014) (quoting *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984))). "[T]here is no due process right to be free from false disciplinary

---

[4] Plaintiff also claims the "SHO sadistically and intentionally denied [his] Due Process right[s]" by failing to "review the actual video footage that [is] maintained by CDCR officials … at RJD," which "would have provided irrefutable evidence that in all fairness would have exonerated [him]." *See* Compl., Doc. No. 1 at 4. Plaintiff does not name the SHO as a Defendant, however, *see* id. at 1-2, and even if he did, his allegations related to the RVR hearing's procedural requirements fail to state a plausible due process claim for the same reason his allegations against Officer Herrera do—*i.e.,* he has failed to allege an "atypical" or "significant" deprivation sufficient to invoke a protected liberty interest under *Sandin*. *See infra*., § III.D.

8

charges," *Solomon v. Meyer*, 2014 WL 294576, at *2 (N.D. Cal. 2014), because "[t]he Constitution demands due process, not error-free decision-making." *Chavira v. Rankin*, 2012 WL 5914913, at *1 (N.D. Cal. 2012); *see also Johnson v. Felker*, 2013 WL 6243280, at *6 (E.D. Cal. 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) and *Freeman v. Rideout*, 808 F.2d 949, 951-53 (2d Cir. 1986)).

Second, Plaintiff's due process claims against Herrera require *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) because he fails to allege facts sufficient to show that the deprivations he suffered as a result of his disciplinary conviction, *i.e.*, six months of lost visitation privileges, imposed the type of "atypical and significant hardship" required by *Sandin* to invoke a liberty interest entitled to *Wolff's* procedural safeguards. *See* Compl., Doc. No. 1 at 4-5. The Supreme Court has expressly held that the loss of visitation privileges for a limited duration is simply "within the range of confinement to be normally expected for one serving [an indeterminate sentence]," and therefore, not "atypical." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (finding prisoner's 2-year loss of visitation privileges as the result of substance abuse violations did not violate due process because it was "not a dramatic departure from accepted standards for conditions of confinement.") (citing *Sandin*, 515 U.S. at 485, 487); *Davis v. Small*, 595 Fed. App'x 689, 691-92 (9th Cir. 2014); *Higdon v. Ryan*, 2014 WL 1827156, at *5 (D. Ariz. 2014) (noting that the "loss of contact visitation cannot form the basis for an independent due process violation," and dismissing claims that the denial of contact visitation was a "significant and atypical hardship" under *Sandin*); *Armenta v. Paramo, et al.,* No. 3:16-CV-02931-BTM-KSC, 2018 WL 4612662, at *7 (S.D. Cal. Sept. 25, 2018) (finding that a disciplinary conviction resulting in, among other things, a 180-day loss of visitation privileges, insufficient to show the "atypical" or "significant hardship" required under *Sandin*).

9

3:18-cv-00717-MMA-AGS

E.  Eighth Amendment – Cruel and Unusual Punishment

To state an Eighth Amendment claim based on a deprivation of humane conditions of confinement, Plaintiff must allege facts sufficient to satisfy two requirements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Iqbal*, 556 U.S. at 678. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Peralta v. Dillard*, 744 F.3d 1076, 1091 (9th Cir. 2014). Prison conditions are not objectively serious unless they amount to "unquestioned and serious deprivations of basic human needs," or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson*, 501 U.S. at 298-300; *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014) (citation omitted). "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (internal quotations omitted). "[A]mong unnecessary and wanton inflictions of pain are those that are totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (internal quotations and citations omitted).

Second, Plaintiff's Complaint "must contain sufficient factual matter" to demonstrate that Defendant Herrera acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Iqbal*, 556 U.S. at 678; *Wilson*, 501 U.S. at 303; *Peralta*, 744 F.3d at 1091. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to the prisoner's health and safety." *Farmer*, 511 U.S. at 837. In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [to the prisoner], and [the prison official] must also draw the inference." *Id.*

Plaintiff alleges the 6-month suspension of visitation privileges with his wife constituted "cruel and unusual punishment." *See* Compl., Doc. No. 1 at 5. But this is merely a "label and conclusion" insufficient to state a plausible claim for relief under *Iqbal*, 556 U.S. at 678 (citation omitted). And the withdrawal or suspension of a

privilege, as opposed to the deprivation of a "basic human need," like food, clothing, shelter, medical care, or personal safety, *see Rhodes*, 452 U.S. at 347; *Farmer*, 511 U.S. at 833, is not generally "sufficiently grave to form the [objectively serious] basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298; *Overton*, 539 U.S. at 136 (finding that while a 2-year visitation restriction based on in-prison substance abuse violations "undoubtedly makes the prisoner's confinement more difficult to bear, … [] it does not … fall below the standards mandated by the Eighth Amendment."); *Cooper v. Garcia*, 55 F. Supp. 2d 1090, 1099 (S.D. Cal. 1999) ("[D]enial of family visitation privileges does not constitute cruel and unusual punishment."); *Dunn v. Castro*, 621 F.3d 1196, 1202-03 (9th Cir. 2010) (finding no clearly established First, Eighth, or Fourteenth Amendment right to visitation) (citing cases); *Armenta*, 2018 WL 4612662, at *11 (180 days in lost visitation privileges found insufficient to state an Eighth Amendment claim).

### F. State Law Claim

Finally, Plaintiff claims Defendant Herrera violated an unidentified California law that criminalizes false reporting by a peace officer. *See* Compl., Doc. No. 1 at 4. But § 1983 does not provide a cause of action for purported violations of state law unless the alleged wrongdoing also violates a federal constitutional right. *See Galen v. Cty. of Los Anlgeles*, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [Plaintiff] to demonstrate a violation of federal law, not state law."); *cf. Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) ("[W]hen a violation of state law causes the deprivation of a right protected by the United States Constitution, that violation may form the basis for a Section 1983 action."). In addition, the Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also Mimms v. California*, No.

3:17-CV-00507-BAS-KSC, 2017 WL 1346721, at *5 (S.D. Cal. Apr. 11, 2017) (dismissing prisoner's supplemental state law claims pursuant to 28 U.S.C. § 1367(c) in light of sua sponte dismissal of all federal claims pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A), *appeal dismissed*, No. 17-55601, 2017 WL 4995819 (9th Cir. May 16, 2017).

Thus, for all these reasons, the Court dismisses Plaintiff's Complaint in its entirety based on his failure to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

G. Leave to Amend

In light of his *pro se* status, the Court will grant Plaintiff leave to file an Amended Complaint in order to address the pleading deficiencies identified in this Order, if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## IV. Conclusion and Orders

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion for Extension of Time (Doc. No. 4) and his Renewed Motion to Proceed IFP (Doc. No. 6) pursuant to 28 U.S.C. § 1915(a).

2. **ORDERS** the Acting Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $8.16 initial filing fee assessed, if those funds are available at the time this Order is executed, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

///

12

3:18-cv-00717-MMA-AGS

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Acting Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and **GRANTS** him forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's new pleading must be clearly entitled "Amended Complaint," include Civil Case No. 18-cv-00717-MMA-AGS in its caption, and be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

DATE: October 15, 2018

HON. MICHAEL M. ANELLO
United States District Judge